IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RUSSELL SCHENCK and BETHANY PRIMROSE d/b/a INSOMNIAC ARTS,<br><br>Plaintiffs<br><br>vs.<br><br>CALE OROSZ and CASE DOODLE, LLC<br><br>Defendants | Case No. Case No. 3:13-CV-0294<br><br>Aleta A. Trauger<br>Judge<br><br>Juliet Griffin<br>Magistrate Judge |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

When considering a motion for preliminary injunction, the Court must consider the following four factors in determining whether to grant a preliminary injunction:

> (1) whether plaintiff[s have] shown a substantial likelihood of probability of success on the merits; (2) whether plaintiff[s have] shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be best served by issuing a preliminary injunction. These four factors, however, are elements to be balanced and not prerequisites that must be met."

*Tree Publ'g Co. v. Warner Bros. Records, a Div. of Time-Warner, Inc.*, 785 F. Supp. 1272, 1274 (M.D. Tenn. 1991)(*internal citations omitted*).

The first factor is the likelihood of success on the merits. With respect to a copyright infringement claim, Plaintiffs must show a likelihood of success as to two

elements: (1) ownership of a valid copyright and (2) copying by the Defendants without authorization. *Id*.

Each certificate of registration constitutes prima facie evidence of the validity of the copyright and the facts stated in the certificate, including the ownership of the copyright. 17 U.S.C.A. § 410 (West 2013).

The Court can infer copying from Defendants' access to the copyrighted material and from the substantial similarity between the claimants' copyrighted material and the Defendants' work. *Tree Publ'g Co*. at 1274. "Evidence that a third party with whom both the plaintiffs and the defendants were dealing had possession of the plaintiffs' work is sufficient to establish access by the defendants." *Id*. "The test for substantial similarity is whether the similarity between the works would lead an average observer to recognize the alleged copy as having been appropriated from the copyrighted work." *Id*. at 1275.

The second factor is irreparable harm. "In copyright infringement cases, the finding of a substantial likelihood of success on the merits raises a presumption of irreparable harm. The absence of that presumption, however, does not preclude the plaintiffs form showing irreparable harm." *Id*. at 1276.

With respect to the third factor, in a copyright infringement case, "courts generally ignore the harm to others consideration because an infringer could set up his infringement with substantial investment and thereby claim harm by the injunctive relief." *Id.* at 1276.

The fourth factor, i.e. how the public interest would be best served, also requires little demonstration by a copyright plaintiff: "it is virtually axiomatic that

the public interest can only be served by upholding copyright protections." *Id*. at 1276-1277.

Although the court in the *Tree Publ'g* case denied the plaintiffs' motion for preliminary injunction, it did so because of a lack of substantial similarity. While this court found that a jury could infer access from the fact that the defendant had produced and distributed a recording of the plaintiffs' work in 1984, the only similarity that the plaintiffs alleged was a four-word lyric that was the same in both songs and that was the title of both songs. *Id*. at 1274-75. The court found the copyright protectability of this four-word lyric dubious and therefore found that the plaintiffs had failed to establish a likelihood of success on the merits. *Id*. Plaintiffs' failure to show a likelihood of success on the merits was the determinative consideration in denying the plaintiffs motion for a preliminary injunction. *Id*. at 1277.

Plaintiffs' motion in this case does not suffer from the same deficiencies that plagued the plaintiffs' motion in *Tree Publ'g*.

***Summary of Facts***

Most e-commerce sellers sell both through their own web sites and through major e-commerce web sites like amazon.com ("Amazon"). In order to sell through Amazon, the seller must establish an Amazon seller name for its Amazon "store." Each item for sale on Amazon lists the seller by its Amazon seller name.

For each item Insomniac Arts ("IA") sells on Amazon, IA has a seller page offering the item for sale. (Am. Compl. ¶ 17). The majority of the seller page is a

template provided by Amazon, from which Amazon does not permit its sellers to deviate. (Am. Compl. ¶ 18). Amazon allows the seller to fill in on the seller page the content that is specific to the item offered for sale on that page. On each of its Amazon seller pages, IA displays a copyrighted image of the product for sale ("Product Image"), a description of the product for sale in which IA includes a copyright notice, and a product title chosen by IA. (Am. Compl. ¶ 17).

Amazon also prohibits its sellers from displaying on Amazon seller pages any Product Image that contains a watermark. (Am. Compl. ¶ 19). For each Product Image IA posts on its own website, IA uses a watermark to identify the Product Image as its own and to discourage infringement. (Am. Compl. ¶ 16). Amazon policy prevents IA from taking the same protective measure on IA's Amazon seller pages. (Am. Compl. ¶ 19-20).

Defendant Orosz operates both his own e-commerce web site, currently on squigglecase.com and formerly on ecello.net, and an Amazon "store". (Am. Compl. ¶ 31-33). At the time Plaintiffs submitted takedown notices to stop Defendants' infringement and at all times relevant to Plaintiffs' Amended Complaint, Defendant(s) operated an Amazon "store" under the seller name Ecello Electronics. (Am. Compl. ¶ 26)(*see also* Pls.' Mot. Prelim. Inj. Ex. 1 *showing connection between Ecello Electronics and squigglecase.com*).

Defendant(s) copied IA's Product Images from IA's Amazon seller pages, where the Product Images bear no identifying marks. (Am. Compl. ¶ 27). Defendant(s) used these Product Images, along with IA's product title and product description- minus the copyright notice- to sell counterfeit versions of these goods

on Ecello Electronics Amazon seller pages. (Am. Compl. ¶ 26-30). Defendant(s) also used the same Product Images to sell counterfeit versions of the goods on its own web site, which, until recently, resembled almost exactly IA's own website, insomniacarts.com. (Am. Compl. ¶ 31-32).

***Likelihood of Success***

To show a likelihood of success on the merits, Plaintiffs must demonstrate both ownership of the copyrights and copying by the Defendants. With respect to each registration in this case, Plaintiffs have made out a prima facie case as to the validity of Plaintiffs' copyright and as to the facts contained in that registration.

More importantly, Plaintiffs in this case have alleged far greater substantial similarity between Plaintiffs' and Defendants' works than did the plaintiffs in the *Tree Publ'g* case. Plaintiffs have alleged that Defendants accessed and copied Plaintiffs' work via Insomniac Arts' amazon.com ("Amazon") seller pages, where Plaintiffs' ability to protect its copyrights is limited by Amazon policy. (Am. Compl. ¶ 16-30). Plaintiffs found the same infringing uses on both the Ecello Electronics Amazon seller pages and on squigglecase.com. (Am. Compl. ¶¶ 26-33)(*see also* Pls.' Mot. Prelim. Inj. Ex. 4). Attached as Exhibit 3 to the motion are copies of the deposit copies filed with the Copyright Office. (Pls.' Mot. Prelim. Inj. Ex. 3). Attached for comparison as Exhibit 4 to the motion are those examples Plaintiffs has retained of infringement taken down by Plaintiffs. (Pls.' Mot. Prelim. Inj. Ex. 4). Both Exhibit 3 and Exhibit 4 are organized by registration in the order in which Plaintiffs' registrations are listed in the chart attached as Exhibit 2 to Pls.' Mot. Prelim. Inj..

*Irreparable Harm*

Plaintiffs have shown that they will suffer irreparable harm. They have shown a likelihood of success on the merits. This alone creates a presumption of irreparable harm. In addition, Plaintiffs have asserted that Defendants have offered for sale counterfeit versions of and thereby decreased the income produced by a majority of Insomniac Arts' catalog, including Insomniac Arts' best-selling items. (Am. Compl. ¶¶ 25-33). IA's normal practice is to execute takedown notices promptly to prevent the exponential growth of infringement made possible by each infringing copy accessible online. (Primrose Aff. on Copyright Registration and Enforcement ¶ 16). The fact that online infringers are often located outside the United States adds to the urgency with which Plaintiffs send takedown notices.

*Harm to Others*

The possible extent of harm to others is normally not significant in copyright cases because an infringer who has invested significantly in illegal activities could then claim irreparable harm. *Tree Publ'g Co*. at 1276.

Although the third factor has minimal bearing in a copyright infringement case, Plaintiffs have shown that the harm Plaintiffs will suffer absent the requested injunctive relief is far greater than the harm that Defendants will suffer if Plaintiffs' request is granted. Defendants copied and diverted income produced by the majority of Insomniac Arts' catalog. (Am. Compl. ¶¶30-32). In the absence of a preliminary injunction, Plaintiffs will lose income produced by a majority of

Insomniac Arts' catalog. If, on the other hand, the Court grants Plaintiffs' request, Defendants will continue to earn income from sales of products that do not infringe on Plaintiffs' copyrights. Screen shots of squigglecase.com taken 15 June 2013, after Defendants removed the materials specified in Plaintiffs' takedown notice, show that Defendants are still offering for sale 361 iPhone 4 and 4s cases, 349 iPhone 5 cases, 342 iPad Mini cases, 353 iPad 2 and 3 cases, 325 iPad sleeves, 354 Galaxy Note cases, 347 Galaxy Note 2 cases, 355 Galaxy S3 cases, 213 Galaxy Tab sleeves, 353 iPod Touch 4th Generation cases, and 349 iPod 5th Generation cases. (Pls. Mot. Prelim. Inj. Ex. 5)(*see also* Am. Compl. Ex. 1).

***The Public Interest***

Plaintiffs assert in agreement with this Court's prior ruling in *Tree Publ'g Co.* that the public interest is best served by upholding copyright protections.

***Conclusion***

The Court should grant Plaintiffs' Motion for Preliminary Injunction because all four factors the Court is to consider weigh in Plaintiffs' favor. Not only have Plaintiffs shown a likelihood of success on the merits, but Plaintiffs have also shown that Plaintiffs will suffer irreparable harm if the Court does not enjoin Defendants and that Defendants would suffer far less if the Court grants Plaintiffs' request. Lastly, as this Court, through the opinion of Judge Nixon, noted in the *Tree Publ'g* case, upholding copyright protections serves the public interest.

s/Anjlee Khurana
Anjlee Khurana (BPR #027350)
Harris, Martin, Jones, P.A.
49 Music Square West, Suite 600
Nashville, TN 37203
615.321.5400
615.321.5469
khurana.anjlee@gmail.com
*Attorney for Plaintiffs*

CERTIFICATE OF SERVICE

I certify that on the 24th day of June, 2013, I electronically filed a copy of the foregoing pleading. Notice of this filing will be sent by operation of the Court's electronic filing system to Christopher J. McGeehan, Richard G. Sanders, and James H. Harris III, as indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.


s/Anjlee Khurana
Anjlee Khurana (BPR #027350)
Harris, Martin, Jones, P.A.
49 Music Square West, Suite 600
Nashville, TN 37203
615.321.5400
615.321.5469
khurana.anjlee@gmail.com
*Attorney for Plaintiffs*