**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RUSSELL SCHENCK and BETHANY** | ) | |
| **PRIMROSE d/b/a INSOMNIAC ARTS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 3:13-CV-0294** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **CALE OROSZ and CASE DOODLE, LLC,** | ) | |
| | ) | |
| **Defendants,** | ) | |

## MEMORANDUM

Pending before the court are several motions relating to the plaintiffs' Amended Complaint. The plaintiffs have filed a Motion for Registration Determination and Restraint of Further Infringement (Docket No. 24) ("Motion for Registration"), to which the defendants filed a Response in opposition (Docket No. 30), and the plaintiffs filed a Reply (Docket No. 40). The defendants have filed a Motion to Dismiss the Amended Complaint (Docket No. 28), to which the plaintiffs filed a Response in opposition (Docket No. 37), and the defendants filed a Reply (Docket No. 45). The plaintiffs have also filed a Motion for Preliminary Injunction (Docket No. 33), to which the defendants filed a Response in opposition (Docket No. 46), and the plaintiffs filed a Reply (Docket No. 52).

For the reasons stated herein, the defendants' Motion to Dismiss will be granted in part and denied in part, the plaintiffs' Motion for Preliminary Injunction will be granted in part and denied in part, and the plaintiffs' Motion for Registration will be denied in part on the merits and denied in part as moot.

## BACKGROUND

## I.    Overview

The plaintiffs, Bethany Primrose and her husband Russell Schenck, run a business called "Insomniac Arts" ("Insomaniac"), which has a principle place of business in Nashville, Tennessee.[1]  Primrose creates graphic designs ("Graphic Designs") that Insomniac prints onto goods such as mobile phone cases, tablet covers, mugs, t-shirts, and other novelty items. Insomniac utilizes product images created by Primrose ("Product Images") to market and sell these items online.  The plaintiffs claim copyright protection – premised on both registered and unregistered copyrights – in the Graphic Designs and Product Images.  The gravamen of the plaintiffs' Amended Complaint is that Nevada resident Cale Orosz, operating through "Case Doodle LLC" ("Case Doodle"), "Ecello electronics," and/or "squigglecase.com", essentially copied and counterfeited Insomniac's web pages, product designs, and products, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

Before the plaintiffs filed this lawsuit, they wrote a March 18, 2013 letter to Hostgator.com LLC ("Hostgator"), the internet service provider ("ISP") for squigglecase.com, asking Hostgator to disable several hundred squigglecase.com "url" links that allegedly contained infringing material.  Hostgator complied with that request.

## II.    Procedural History and the Instant Motions

The plaintiffs filed their initial Complaint on April 2, 2013.  (Docket No. 1.)  On May 29, 2013, the plaintiffs filed an Amended Complaint (Docket No. 22), which they verified through a separate Verification on June 24, 2012.  (Docket No. 32.)

---

[1]The Amended Complaint does not state the nature of Insomniac Arts' corporate existence, if any.

On May 29, 2013, the plaintiffs filed the instant Motion for Registration, which asked the court (1) to declare the unregistered copyrights "registered" for purposes of the Copyright Act; and (2) to restrain the defendants from (a) causing Hostgator to "replace" (*i.e.*, to enable) the links identified in the Takedown Notice and/or (b) from placing infringing material online through any ISP. On June 12, 2013, the defendants filed the instant Motion to Dismiss, arguing that (1) the plaintiffs have improperly asserted claims based on unregistered copyrights and copyrights whose effective dates post-dated the Complaint, and (2) the plaintiffs' allegations of copyright infringement failed to meet the requisite pleading standard.

Apparently in response to the defendants' positions with respect to the Motion for Registration and the Motion to Dismiss, the plaintiffs filed the instant Motion for Preliminary Injunction. In support of the Motion for Preliminary Injunction, the plaintiffs have filed (1) various exhibits (Docket No. 33, Exs. 1-5, including subparts; and Docket No. 52, Exs. 1-3), (2) a Memorandum of Law (Docket No. 34), (3) a Verification of the Amended Complaint (Docket No. 32), and (4) the Affidavit of Bethany Primrose on Copyright Registration and Enforcement (Docket No. 36).[2] In opposition, the defendants filed a Memorandum of Law (Docket No. 47), three exhibits summarizing information in the record (Docket No. 46, Exs. 1-3), and two exhibits consisting of internet printouts (*id.*, Exs. 4-5). The defendants did not file any sworn statements to rebut the plaintiffs' verified Amended Complaint allegations or the factual averments in the Primrose Affidavit.

Neither party requested a hearing on the Motion for Preliminary Injunction. Because the motion can be resolved without the need for an evidentiary hearing, the court finds that an

---

[2]The plaintiffs did not file a proposed injunction order.

evidentiary is not necessary.  *See Potter v. Havlicek*, 2007 WL 539534 ("A hearing is not always necessary on a motion for preliminary injunction.") (citing *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172 (3d Cir. 1990) and 11A Charles Alan Wright & Arther R. Miller, *Fed. Prac. & Proc.*, § 2949.)

## III.  Facts[3]

### A.  Infringement by the Defendants

Primrose authors Graphic Designs that she intends for Insomniac to imprint on goods that Insomniac will market and sell online.  With respect to each good that Insomniac offers for sale, Primrose creates a Product Image with the Graphic Design superimposed upon it.  When advertising a particular item for sale, Insomniac utilizes the Product Image for that item.  Typically, Insomniac affixes a watermark to each of its Product Images, except for Product Images displayed on Amazon.com, which does not permit sellers to affix watermarks.[4]

At some point during or before September 2012, Orosz began operating an online retail business that sells cases for electronic products, bearing printed designs, in competition with Insomniac.  In November 2012, Orosz formed Case Doodle LLC ("Case Doodle"), the LLC under which he now operates his retail business in competition with Insomniac.  In November 2012, Insomniac noticed that sales of its best-selling items had dropped to zero.

On or about February 10, 2013, the plaintiffs discovered that Ecello Electronics, a

---

[3]The defendants have not submitted any sworn materials in response to the verified Amended Complaint allegations and the Primrose Affidavit.  Therefore, the plaintiffs' sworn facts are essentially undisputed and are summarized in this section.

[4]With respect to items offered by Insomniac on Amazon.com, the "product description" on the plaintiffs' Amazon.com pages for those websites (which the parties here refer to as "seller pages") states: "Copyright Insomniac Arts."

"seller" entity run by Orosz (either directly or through Case Doodle), was advertising on Amazon.com counterfeit goods almost entirely appropriated from Insomniac seller pages. Orosz (either directly or through Case Doodle), had essentially copied the vast majority of Insomniac's seller pages wholesale, including product titles, product descriptions, and the Product Images that, in accordance with Amazon.com policy, did not contain "Insomniac" watermarks. Thus, the "Ecello Electronics" seller pages on Amazon were essentially the same as Insomniac's seller pages, save for the omission of any references to "Insomniac." Insomniac also discovered that Orosz (either directly or through Case Doodle) was advertising counterfeit goods through his own website, first operated under the url "Ecello.net" and later under the url "squigglecase.com." According to the plaintiffs, "squigglecase.com" was a nearly identical copy of InsomniacArts.com, including product titles and Product Images.[5]

## B. Takedown Notice

On March 18, 2013, pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, counsel for Insomniac wrote to Hostgator, requesting that Hostgator disable several hundred squigglecase.com urls that allegedly contained infringing material.[6] (*See* Am. Compl., Ex. 1 (hereinafter, "Takedown Notice").) On March 20, 2013, in response to the Takedown Notice, counsel for Case Doodle wrote to Hostgator, claiming that Case Doodle

---

[5]The court infers that Insomniac was also selling products through its own web page, InsomniacArts.com.

[6]The notice stated that Insomniac "registers the copyright for each image it designs" and "photographs each of the goods on which it has printed its image and uses those photographs to represent online the corresponding good offered for sale." (Am. Compl., Ex. 1.) The notice alleged that squigglecase.com "has copied those photographs without authorization and are being used [sic] to advertise counterfeit goods bearing images owned by Insomniac Arts." (*Id.*)

operates squigglecase.com.  (Am. Compl., Ex. 2.)  In the letter, Case Doodle's counsel urged

Hostgator not to disable the urls, arguing that Insomniac's Takedown Notice was facially

deficient under DMCA § 512(c)(3).  In the alternative, the letter attached a counter-notification

("Counter-Notification") pursuant to DMCA § 512(g)(3), signed under oath by Orosz as

"President" of Case Doodle, stating that Orosz had "a good faith belief that the material was

removed or disabled as a result of mistake or misidentification of the material to be removed or

disabled."  It appears that, notwithstanding Case Doodle's objections, Hostgator honored

Insomniac's Takedown Notice.  On April 2, 2013, Insomniac filed the instant lawsuit, within the

14-day window provided by DMCA § 512(g)(2)(c), thereby precluding Hostgator from replacing

the allegedly infringing links.

### C.      Materials Concerning Infringement

The plaintiffs have presented evidence relating to their claimed copyrights and the

defendants' infringement thereof.  Although the presentation of this information is not a model

of clarity, the defendants helpfully have summarized the information in three charts, the accuracy

of which the plaintiffs have not disputed (and which the court has independently verified).

Based on the information in the record, including those summaries and other publicly available

information, the facts are as follows:

- As of April 2, 2013, the plaintiffs claimed copyright protection in 62
  different "collections."  As of that date, the plaintiffs possessed copyright
  registration certificates for 41 of the collections, and the plaintiffs had
  filed pending registration applications for at least some of the other 21.

  Based on the court's construction of Exhibits 3 and 4 to the Amended
  Complaint, the plaintiffs alleged infringement of 43 of the 62 collections
  (corresponding to 27 registered copyrights and 16 unregistered copyrights
  subject to then-pending applications), but not the remaining 19

collections.[7]

- Between October 3, 2010 and February 10, 2013 (the date on which the plaintiffs discovered the defendants' infringing activity), the plaintiffs registered eight copyrights, including five of the 43 collections that they allege the defendants infringed. (*See* Docket No. 46, Ex. 1.) Between February 10, 2013 and March 18, 2013 (the date on which the plaintiffs sent the Takedown Notice), the plaintiffs applied for and received registration certificates for two more copyrights, both of which the Amended Complaint had identified as infringed. (*Id.*) From March 23, 2013 forward, the plaintiffs submitted applications with respect to the remaining collections, admittedly in a rush to register the remaining copyrights before filing the instant lawsuit. As of May 29, 2013, the date of the Amended Complaint, the Copyright Office had registered a total of 41 copyrights, and approximately 13 applications remained pending.

  Under the Copyright Act, once the Copyright Office passes on a copyright application, the "effective date" of the registration is retroactive to the date of application. Thus, although the effective dates of all but two of the 41 registered copyrights listed in the Amended Complaint are April 2, 2013 or earlier, it is not self-evident *when* the Copyright Office actually passed on each application. That is, it may be that, for some of the 39 registrations bearing effective dates of April 2, 2013 or earlier, the associated application was actually pending as of April 2, 2013.

- At some point between May 29, 2013 and June 24, 2013 (the date the plaintiffs filed their Motion for Preliminary Injunction), the Copyright Office registered three more copyrights.[8] Based on publicly available

---

[7]Exhibit 3 to the Amended Complaint contains a column entitled "Contains Work Stolen by eCello/SquiggleCase," and another column entitled "Work Copied." For 43 of the collections, the plaintiffs marked "yes" in the "Work Stolen" column and listed "designs" and/or "product images" in the "Work Copied" column. For the remaining 19 collections, both columns are blank. Exhibit 4 to the Amended Complaint contains proof of registration for the 43 allegedly infringed collections but not for the 19 remaining collections. Furthermore, in support of the Motion for Preliminary Injunction, the plaintiffs did not file any evidentiary materials relating to those 19 collections.

[8]In Exhibit 2 to the Motion for Preliminary Injunction, the plaintiffs attached an "updated" chart of the copyright registrations, without explaining what "updates" the chart contained relative to the previous version. Based on the court's review, the updated chart appears to reflect additional registrations for (1) the InsomniacArts.com web design (retroactively effective April 1, 2013), (2) the Autism Awareness Collection 2012 (retroactively effective April 2, 2013), and the (3) the TV & Movie Collection 2012 (retroactively effective

information in the Copyright Office database, it appears that the Copyright Office may have registered at least five more copyright collections after June 24, 2013. If that is in fact the case, it appears, by the court's count, that only five copyrights are currently subject to pending applications.[9]

- The plaintiffs have produced "deposit copies" from 45 of their collections (*see* Motion for Preliminary Injunction, Ex. 3 [Attachment Nos. 3–47].) The plaintiffs have produced examples of infringement for 31 of those collections, consisting of Amazon.com screen captures (hereinafter, "screencaps")[10] for Ecello Electronics seller pages and squigglecase.com screencaps.[11] (*Id.*, Ex. 4 [Attachment Nos. 48-78].) Again, the plaintiffs did not categorize this information for the court, although the defendants provided a chart that logically matches up the collections, the alleged examples of infringement, and the registration status for each copyright at issue. (Docket No. 46, Ex. 2.)

  Having matched up the examples of infringement with the associated collections, the court finds that, as matter of fact, the Product Images and Graphic Designs on the Ecello Electronics and squigglecase.com pages appear to be identical to the corresponding "deposit copies" provided by the plaintiffs. For example, the Breast Cancer Awareness collection contains a design consisting of the words "Peace," "Love," and "Cure" in a cursive font below pink-colored images of a peace sign, a heart, and a ribbon. An Ecello Amazon.com seller page contains an identical image on an iPhone case. Similarly, the Breast Cancer Awareness collection contains a design with the words "Save the Hooters!" in cursive font below images of two pink cartoon owls. Squigglecase.com seller pages advertise an identical image on an iPhone case and a tablet, and an Ecello Electronics Amazon.com seller page advertises the same image on an iPad

---

April 2, 2013). The plaintiffs' Amended Complaint alleges that the defendants infringed each of these (now-registered) copyrights. (*See* Am. Compl., Ex. 3.)

[9]Based on the court's search of the Copyright Office's website, it appears that at least 8 of the post-Complaint registrations have effective registration dates of April 2, 2013 or earlier.

[10]A "screencap," or "screen capture," is an image taken by the user of a computer to record the items visible on the viewscreen of a monitor or other digital device. Here, it appears that the plaintiffs opened links for particular internet pages and created digital "screencaps" showing the content on each page as a user would see them. The plaintiffs filed .pdf versions of each screencap on the docket for this case, as required by the court's case filing system.

[11]The squigglecase.com screencaps do not contain the associated url. Thus, the court cannot tell whether these screencaps correspond to the urls listed on the Takedown Notice.

Touch case.

> Of the 31 collections for which the plaintiffs provided direct evidence of infringement, it appears that 18 correspond to registered copyrights and 13 do not. The plaintiffs have not identified which examples of infringement correspond to the urls identified in the Takedown Notice (whether related to registered copyrights or not).

Remarkably, the defendants have not submitted any testimony rebutting the plaintiffs' fundamental allegation: that the defendants wholesale plagiarized the plaintiffs' Graphic Images and Product Designs. Nor have the defendants challenged the authenticity or accuracy of the Amazon.com and squigglecase.com screencaps provided by the plaintiffs. Taken as authentic – and in the absence of any sworn rebuttal from the defendants – the court finds that the screencaps demonstrate that the defendants copied the plaintiffs' works and attempted to capitalize on them for profit through a competing online retail business or businesses. The only remaining issues are (1) whether the plaintiffs possess valid copyrights that entitle them to maintain this lawsuit in whole or in part; and (2) to the extent the plaintiffs are entitled to maintain their lawsuit, whether the defendants' actions in copying and marketing the plaintiffs' Graphic Designs and/or Product Images constituted copyright infringement.

## **RULE 12(B)(6) AND RULE 65 STANDARDS**

### I.  **Rule 12(b)(6) Standard**

In deciding a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain

statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" as required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[threadbare] recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009).

## II.     Rule 65 Standard

Under Fed. R. Civ. P. 65, the court may issue a preliminary injunction under appropriate circumstances. In assessing whether an injunction is appropriate, the court applies the following standard:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest.

*Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

When plaintiffs show a reasonable likelihood of success on their copyright infringement

claims, the plaintiffs are entitled to a rebuttable presumption of irreparable harm. *Forry, Inc. v. Neundorfer, Inc.*, 837 F.2d 259, 267 (6th Cir. 1988). Also, in copyright infringement cases, "courts generally ignore the harm to others consideration because an infringer could set up his infringement with substantial investment and thereby claim harm by the injunctive relief." *Tree Publ'g Co., Inc. v. Warner Bros. Records, a Div. of Time-Warner, Inc.*, 785 F. Supp. 1272, 1276 (M.D. Tenn. 1991) (citing *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983)). Finally, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections." *Tree Publ'g*, 785 F. Supp. at 1276-77 (citing *Apple Computer*, 714 F. 2d at 1255). Therefore, as this court has previously observed, in most copyright infringement cases, "the plaintiffs' burden for obtaining a preliminary injunction . . . collapses into the showing of a substantial likelihood of success on the merits, and that issue becomes determinative." *Tree Publ'g Co.*, 785 F. Supp. at 1276. Indeed, with respect to the plaintiffs' Rule 65 motion, the defendants here have only challenged whether the plaintiffs have demonstrated a reasonable likelihood of success on the merits.

## ANALYSIS

### I.     Motion for Registration

As an initial matter, the court will deny the Motion for Registration. The motion in part asks the court to declare that the pending copyright applications have been "registered" under the Copyright Act. Although the court has jurisdiction to address the registrability of a copyright, the plaintiffs cite no legal authority permitting the court to preempt the Copyright Office by "deeming" pending applications registered in the first instance. For any remaining pending copyright applications, the plaintiffs must first obtain a determination from the Copyright Office.

Therefore, the Motion for Registration is denied on the merits with respect to the request for a registration determination.

To the extent the Motion for Registration requests injunctive relief, that request has been subsumed by the plaintiffs' Motion for Preliminary Injunction under Rule 65, which is the appropriate vehicle for seeking a preliminary injunction. Therefore, to the extent it seeks injunctive relief, the court will deny the Motion for Registration as moot.

## II.    Motion to Dismiss Arguments

The materials provided by the plaintiffs in support of the Motion for Preliminary Injunction have in part addressed certain concerns raised by the defendants in the Motion to Dismiss. The parties' remaining arguments concerning the Motion to Dismiss and the Motion for Preliminary Injunction overlap significantly. Therefore, rather than address the arguments in two separate sections, the court will analyze the defendants' Rule 12 arguments alongside its analysis of the merits of the injunction motion.

## III.    Whether the Plaintiffs Can Maintain Claims Premised on Unregistered Copyrights

Under 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."

In *Reed Elsevier v. Muchnick*, the Supreme Court held that, although a federal court has subject matter jurisdiction over a lawsuit concerning an unregistered copyright, § 411(a) imposes a non-jurisdictional precondition to filing suit. 559 U.S. 154, 166 (2010). Post-*Elsevier*, district courts within this circuit have uniformly concluded that, upon a motion for failure to state a claim under Rule 12(b)(6), claims premised on unregistered copyrights must be dismissed in

light of § 411(a).[12]

The plaintiffs argue that, even if the court believes that the registration requirement otherwise applies here, the court should treat the plaintiffs' pending applications as "registered" for purposes of § 411(a). As this court previously discussed in *Specific Software Solutions, LLC v. Inst. of WorkComp Advisors, LLC*, 615 F. Supp. 2d 708 (M.D. Tenn. 2009), there is a split of authority among federal courts (which the Sixth Circuit has not addressed) as to when "registration" occurs for purposes of § 411(a). Some courts, including the Tenth Circuit and Eleventh Circuit, have adopted a "registration approach," under which the copyright is "registered" only when the Copyright Office passes on the material submitted by the applicant. *See La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1202-04 (10th Cir. 2005); *M.G.B. Homes, Inc., v. Ameron Homes, Inc.*, 903 F.2d 1486, 1489 (11th Cir. 1990).

---

[12]*See TreadmillDoctor.com v. Johnson*, No. 08-2877, 2011 WL 1256601, at *4-*5 (W.D. Tenn. Mar. 31, 2011) ("When a plaintiff files a copyright infringement action before preregistration or registration of the copyright has occurred, the 'precondition' required by § 411(a) is not satisfied. Although the district court has jurisdiction, the action is subject to dismissal when a defendant moves to dismiss the action for failure to state a claim.") (internal citations omitted); *Sony/ATV Music Publ'g LLC v. D.J. Miller Music Distribs., Inc.*, No. 3:09-cv-01098, 2010 WL 3872802, at *4 (M.D. Tenn. Sept. 28, 2010) (dismissing claims based on songs for which copyright registrations were not obtained until after the lawsuit was filed); *Lyles v. Capital-EMI Music Inc.*, Civil Action No. 2:12-cv-00751, 2012 WL 3962921, at *3 (S.D. Ohio Sept. 11, 2012) (Magistrate Judge's Report and Recommendation, adopted on Oct. 30, 2012) ("The failure to register an allegedly-copied work with the Copyright Office before filing suit subjects a plaintiff's infringement action to dismissal."); *Allure Jewelers, Inc. v. Ulu*, No. 1:12cv91, 2012 WL 4322519, at *2 (S.D. Ohio Sept. 20, 2012) (dismissing copyright claim, where plaintiff did not obtain copyright registrations until after filing suit); *see also Murray Hill Publications, Inc. v. ABC Commcn's, Inc.*, 264 F.3d 622, 630 (6th Cir. 2001) ("With very limited exceptions . . . registration is a prerequisite to filing a copyright infringement suit."); *Airframe Sys. Inc. v. L-3 Commn's Corp.*, 658 F.3d 100, 105 (1st Cir. 2011) ("Although the Supreme Court in *Reed Elsevier* [] recently held that the Copyright Act's registration requirement 'does not implicate the subject-matter jurisdiction of federal courts,' proof of registration of the allegedly infringed work remains an 'element[] of a cause of action for copyright infringement'.") (quoting *Reed Elsevier*, 120 S. Ct. at 1248, 1243-44).

Other courts, including the Fifth, Seventh, and Ninth Circuits, have adopted an "application approach," under which the copyright is "registered" upon submitting the requisite fee, deposit, and application. *See Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386-87 (5th Cir. 1984); *Chicago Bd. of Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003); *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612 (9th Cir. 2010). This court, along with the other district courts within this circuit to have addressed the issue, has adopted the registration approach. *See Specific Software*, 615 F. Supp. 2d at 716 ("Plainly, Congress intended a scheme in which, before an entity could sue on a claim of copyright infringement, the Copyright Office would be entitled to pass, in an essentially non-binding manner, on the vitality of the copyright."); *see also Teevee Toons, Inc. v. Overture Records*, 501 F. Supp. 2d 964, 967-68 (E.D. Mich. 2007); *Hawaiian Village Computer, Inc. v. Print Mgmt. Partners, Inc.*, 501 F. Supp. 2d 951 (E.D. Mich. 2007); *Ripple Junction Design Co. v. Olaes Enters.*, No. 1:05-CV-43, 2005 WL 2206220, at *3 (S.D. Ohio Sept. 8, 2005).[13]

One year after this court issued *Specific Solutions*, the Ninth Circuit in *Cosmetic Ideas* acknowledged the split of authority – including the decisions by this court and multiple other

---

[13]In *Specific Software*, this court, following the Sixth Circuit and several other circuits, characterized § 411(a) as a "jurisdictional" requirement appropriately resolved under the Rule 12(b)(1) standard. 615 F. Supp. 2d at 712. *Reed* abrogated the court's characterization of § 411(a) as "jurisdictional." However, *Reed* did not otherwise impact the court's statutory construction of § 411(a) and its findings concerning the registration approach. Practically, *Reed* simply means that the court must consider the failure to register the copyright(s) at issue as a basis for dismissal by motion under Rule 12(b)(6), rather than as a basis for dismissal for lack of jurisdiction under Rule 12(b)(1). Indeed, the parties in *Specific Software* had initially moved under Rule 12(b)(6), and the court's statutory analysis of the term "registration" within 17 U.S.C. § 411(a) – a pure question of law – would have been the same under either standard. *Accord Sony/ATV*, 2010 WL 3872802, at *4 ("Although in *Specific Software Solutions* . . . the court[] viewed the defect as jurisdictional, a conclusion now abrogated by *Reed Elsevier*, the statute is no less clear that copyright registration is necessary before remedies for copyright infringement can be sought by filing a lawsuit in federal court.")

district and circuit courts that have adopted the registration approach – and chose to adopt the application approach. *See Cosmetic Ideas*, 606 F.3d at 619. Here, the plaintiffs urge the court to follow *Cosmetic Ideas* and adopt the application rule. However, the plaintiffs' arguments essentially replicate arguments that this court rejected in *Specific Solutions*, and the plaintiffs have not persuaded the court to reconsider its previous adoption of the registration rule, which remains consistent with every district court to have addressed the issue within this circuit.

### B.     The DMCA and the Registration Approach

The plaintiffs argue that, when an unregistered copyright owner challenges infringing online material under the DMCA and receives a counter-notification, applying the registration approach has unfair effects. The court agrees with the plaintiffs that the interaction between the DMCA and the registration rule appears to be a matter of first impression within this circuit.

#### 1.     The DMCA

The DMCA was enacted in 1998 as § 512 of the Copyright Act. *Costar Grp. Inc. v. LoopNet, Inc.*, 373 F.3d 544, 552 (4th Cir. 2004).[14] "The DMCA was enacted both to preserve copyright enforcement on the Internet and to provide immunity to service providers from copyright infringement liability for 'passive,' 'automatic' actions in which a service provider's system engages through a technological process initiated by another without the knowledge of the service provider." *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 625 (4th Cir. 2001) (citing H.R. Conf. Rep. No. 105-796, at 72 (1998); H.R. Rep. No. 105-551(I), at 11 (1998)); *see also Arista Records, LLC v. Does 1-9*, No. 2:07-cv-961, 2008 WL 2982265, at *4 (S.D. Ohio July 29, 2008) ("The DMCA was 'designed to strike a balance between the interests of ISPs in

_____

[14]The parties have not cited, nor has the court located, any Sixth Circuit case referencing the DMCA.

15

avoiding liability for infringing use of their services and the interest of copyright owners in protecting their intellectual property and minimizing online piracy.'") (quoting *Recording Indus. Ass'n v. Charter Commnc's, Inc. (In re Charter Commcn's, Inc.)*, 393 F.3d 771, 774 (8th Cir. 2005)).

In most relevant part, the DMCA affords ISPs limitations on liability "for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the [Internet] service provider, provided that (1) the ISP lacks scienter about a copyright violation by a user, (2) does not profit directly from the violation, and (3) responds expeditiously to a proper notice of the violation." *See* 17 U.S.C. § 512(c)(1). A "proper" notification must meet the criteria set forth in § 512(c)(3). The ISP only benefits from the "safe harbor" protection against copyright infringement if, upon receiving a compliant notification, it (1) informs the subscriber (*i.e.*, the allegedly infringing entity) that it has disabled access to the material identified in the notification, (2) furnishes to the notifying entity, within 10 days, any "counter-notification" from the subscriber, and (3) "replaces" (*i.e.*, re-enables) the removed material *unless*, within 10 to 14 days of receiving a counter-notification, the original notifying party (*i.e.*, the copyright owner) informs the ISP that it has filed an action seeking a court order to restrain the subscriber from engaging in infringing activity "relating to the material on the service provider's system or network." *Id.* § 512(g)(2).[15]

---

[15]Although not addressed by the parties here, the DMCA also provides specific requirements concerning the types of injunctions a court may issue "against ISPs." 17 U.S.C. § 512(j)(1). The DMCA identifies specific considerations that the court must take into account when considering injunctive relief against an ISP. *Id.* § 512(j)(2). The DMCA also specifies that "[i]njunctive relief under this subsection shall be available only after notice to the service provider and an opportunity for the service provider to appear are provided . . . ." Here, as the court construes the plaintiffs' Motion for Preliminary Injunction, the plaintiffs only seek to restrain the defendants, not Hostgator.

With respect to the notice required under § 512(c)(3), the copyright holder must provide a notice that "substantially" complies with the statutory requirements. Thus:

> In the spirit of achieving a balance between the responsibilities of the service provider and the copyright owner, the DMCA requires that a copyright owner put the service provider on notice in a detailed manner but allows notice by means that comport with the prescribed format only "substantially," rather than perfectly. . . . In addition to substantial compliance, the notification requirements are relaxed to the extent that, with respect to multiple works, not all must be identified – only a "representative" list. *See id.* § 512(c)(3)(A)(iii). And with respect to location information, the copyright holder must provide information that is "reasonably sufficient" to permit the service provider to "locate" this material. *Id.* § 512(c)(3)(A)(iii). This subsection specifying the requirements of a notification does not seek to burden copyright holders with the responsibility of identifying every infringing work – or even most of them – when multiple copyrights are involved. Instead, the requirements are written so as to reduce the burden of holders of multiple copyrights who face extensive infringement of their works. Thus, when a letter provides notice that can be easily identified by the service provider, the notice substantially complies with the notification requirements.

*ALS Scan*, 239 F.3d at 625 (emphasis omitted).

### 2. The Plaintiffs' § 512 Notification and this Lawsuit

Here, the plaintiffs argue that they were essentially forced to sue prematurely by the timing requirements in the DMCA. Assuming *arguendo* that the DMCA contemplates a takedown notice premised on an unregistered copyright – an issue on which the court expresses no opinion – the DMCA could place the owner of an unregistered copyright in a difficult position. If the owner files a takedown notice and receives a counter-notification from the allegedly infringing party, the holder must file suit within 10-14 days to prevent the ISP from replacing the material – even though the lawsuit will be subject to dismissal under § 411(a) because the copyright is not registered (at least in jurisdictions adopting the "registration approach").

Although there may be a (better-briefed) case addressing the potential equities in such a situation, this is not that case. The plaintiffs' failure to obtain registrations before suing was self-imposed. First, the "first publication" dates on their registration applications show that the plaintiffs were utilizing the referenced materials for months (and in some cases over a year) without filing copyright registrations. (*See, e.g.*, VA0001859159 (First Publication Date June 25, 2011); registration application filed Mar. 26, 2013.) They have not explained why they did not file registration applications for those works – as they had done for certain other collections – during that time frame. Second, they apparently knew as of February 10, 2013 that the defendants were copying and profiting from materials that they had authored. Nevertheless, the plaintiffs filed only a handful of copyright applications between that date and March 18, 2013, when they sent the Takedown Notice. Thereafter, the plaintiffs filed the remaining applications, including a host of applications filed on April 1, 2013 and April 2, 2013. Primrose avers that she "became aware on or about 1 April 2013 that our attorney would file our Complaint on 2 April 2013," and that she encountered technical difficulties in uploading and completing applications on the Copyright Office's website. Be that as it may, the plaintiffs have not shown that the DMCA – rather than, perhaps, a lack of adequate communication with counsel – forced them to do a "mad dash" at the eleventh hour.

At any rate, the plaintiffs have not provided a meaningful construction of the DMCA that shows it was intended to abrogate § 411(a) or that it is inconsistent with the registration approach. Nor have the plaintiffs cited any authority interpreting the DMCA, let alone any authority supporting their position.

Under the circumstances presented, and in the absence of a persuasive alternative

construction of the DMCA and § 411(a), the court finds that the DMCA does not displace § 411(a)'s registration requirement or the registration approach. Accordingly, the court finds that, to the extent the plaintiffs have filed suit based on copyrights that were not registered as of the date of the Complaint, claims premised on those particular copyrights must be dismissed without prejudice pursuant to Rule 12(b)(6). Because those claims are being dismissed, the court will not issue an injunction with respect to those copyrights.

Although the defendants have asked the court to dismiss the Amended Complaint in its entirety because the plaintiffs have alleged *some* claims subject to dismissal under § 411(a), the court finds that broad requested relief to be unwarranted. As an initial matter, the plaintiffs' verified Amended Complaint alleges that the defendants copied the plaintiffs' works to operate a competing business, and the Amended Complaint alleges infringement of presumptively valid copyrights that were registered on or before the date of the Amended Complaint. Those allegations are sufficient to satisfy the plaintiffs' Rule 12 burden with respect to the registered copyrights. Furthermore, as explained in the next section, the plaintiffs have satisfied the Rule 65 factors with respect to certain works for which they held a copyright registration as of the Complaint date. Because the plaintiffs have satisfied § 411(a)'s registration precondition with respect to those particular copyrights – both under the Rule 12 pleading standard and, when considering the additional evidence, the Rule 65 evidentiary standard – the plaintiffs may proceed with their claims related to infringement of those copyrights. Therefore, the court will dismiss without prejudice only the claims premised on allegedly infringed copyrights that the Copyright Office did not register on or before April 2, 2013.

### C.      Rule 65

1.     <u>Reasonable Likelihood of Success on the Merits</u>

Direct copyright infringement may be proved by demonstrating: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.  *Balsley v. LFP, Inc.*, 691 F.3d 747, 757-58 (6th Cir. 2012) (citing *Bridgeport Music, Inc. v. WB Music Corp*, 508 F.3d 394, 398 (6th Cir. 2007)).  Also, when there is no direct evidence of copying, a plaintiff may establish an inference of copying by showing (1) access to the allegedly infringed work by the defendants and (2) a substantial similarity between the two works at issue.  *R.C. Olmstead v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010).

The court has already explained that the plaintiffs may only maintain suit with respect to copyrights that were registered as of April 2, 2013, which the court will hereinafter refer to as "timely registered copyrights."  The plaintiffs' timely registered copyrights are entitled to a "presumption of validity."  17 U.S.C. § 410(c) (stating that a valid certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate.")

As an initial matter, the defendants have not provided testimony rebutting the plaintiffs' fundamental claim: that the defendants committed direct infringement by copying the plaintiffs' Graphic Designs and Product Images and utilized them to run a competing business or businesses through Amazon.com, squigglecase.com, and other websites.  Furthermore, the defendants do not dispute that they had access to the plaintiffs' works, which the plaintiffs were required to post without watermarks on Amazon.com. Nor, with a single exception, do the defendants meaningfully dispute that the examples of infringement are substantially similar to the plaintiffs' works.  Indeed, with respect to at least some of the registered copyrights at issue,

the examples of infringement presented to the court provide direct evidence of infringement: generally, the designs and images are identical as between the deposit copies and the defendants' seller pages.

Notwithstanding their silence as to the gravamen of the plaintiffs' case, the defendants assert some cursory challenges to the validity of the plaintiffs' copyrights and the originality of the plaintiffs' works, none of which displaces the statutory presumption of validity.

a.    "Visual Arts" Registrations

First, the defendants argue, without citation to any legal authority, that the plaintiffs' applications are of "questionable validity" because they did not comply with regulations governing the registration of visual arts.  Although the plaintiffs argue that the defendants' position is without merit, the plaintiffs similarly do not cite any statute, regulation, or case in support of their position.  Having conducted its own research in an effort to assess the merits of the parties' positions, the court presumes that the parties are referring to 17 U.S.C. § 101, which sets forth the definition of visual art, and 37 C.F.R. § 202.3, which provides for the single registration of certain categories of works and the group registration of others.  *See also* 17 U.S.C. § 408.  Assuming that the court has identified the appropriate authorities, the proper interpretation of, and interaction among, these provisions present complicated considerations that neither party has adequately briefed.  Be that as it may, the court first notes that the definition of "works of visual art" in 17 U.S.C. § 101 is significantly narrower than the definition of "works of the visual arts" in 37 C.F.R. § 202.3, which relates to single registration of multiple works. The regulatory definition encompasses "all published and unpublished pictorial, graphic, and sculptural works," such as "[t]wo[-]dimensional and three[-]dimensional works of the fine,

graphic, and applied arts; photographs; . . . and pictorial or graphic labels and advertisements."
37 C.F.R. § 202.3.[16]  That definition arguably encompasses the plaintiffs' design and images (as
well as the goods marketed by Insomniac that bear the underlying designs).

Assuming *arguendo* that 37 C.F.R. § 202.3 applies, the plaintiffs could have submitted a
single registration application on either of two grounds: (1) as a collection of "published works"
or (2) as a collection of "unpublished works."  Assuming that the applications here were for
"published works" (because the plaintiffs posted the material on the internet through Insomniac
before seeking copyright protection), the regulations require that, within the collection, (i) "all
copyrightable elements [] are otherwise recognizable as self-contained works," (ii) those
copyrightable elements are included in a single unit of publication, and (iii) "the copyright
claimant is the same" with respect to each constituent work.  37 C.F.R. § 202.3(b)(4)(i).  Here,
assuming that the aforementioned analysis is appropriate, the plaintiffs' copyright collections
appear to satisfy parts (i) and (iii).  As to (ii), it is at least plausible that, when the plaintiffs
published each collection on the internet, the collection was published as a "single unit of
publication," akin to, for example, a catalog, fabric design, or other form of published collection.
*See, e.g., L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 466 F. App'x 590, 591 (9th Cir. 2012)
(fabric design collection comprised of multiple similar designs), *reversing L.A. Printex Indus. v.
Aeropostale*, No. CV 08-07085 DPP (Ex.), 2010 WL 2813800 (C.D. Cal. May 5, 2010); *Kay*

---

[16]By contrast, the statutory definition is defined much more narrowly to include any
"painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200
copies or fewer that are signed and consecutively numbered by the author . . . ," or "a still
photographic image produced for exhibition purposes only, existing in a single copy that is
signed by the author."  *Id.*  The statutory definition expressly does not include, among other
things, any "applied art, . . . electronic publication, or similar publication," or "any
merchandising item or advertising, promotional, descriptive, covering, or packaging material or
container."  *Id.*

*Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 206 (3rd Cir. 2005) (catalog of "garden accent rocks"); *Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 Civ. 3841(RWS), 1997 WL 639037, at *11 (S.D.N.Y. Oct. 14, 1997) (collection of "baby shoe pendents" that were "marketed as a single line"). As to "unpublished works," the regulations require that the collection contain "copyrightable elements that are otherwise recognized as self-contained works, and are combined in a single unpublished 'collection.'" 37 C.F.R. § 203.3(b)(4)(i)(B). A combination of such elements is a "collection" if: "(1) The elements are assembled in an orderly form; (2) The combined elements bear a single title identifying the collection as a whole; (3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and (4) all of the elements are by the same author . . . ." *Id.* Here, but for the fact that the plaintiffs published their collections before seeking registration, the criteria for the single registration of unpublished collections otherwise appear to be met.

The burden is on the defendants to overcome the presumption of validity that attaches to the plaintiffs' copyrights. As many courts have observed, when a defendant alleges that defects in a copyright application should overcome the presumption of validity because of fraud on the Copyright Office, the defendant must show that "the application for copyright registration is factually inaccurate, that the inaccuracies were willful and deliberate, and that the Copyright Office relied on those misrepresentations." *Jedson Engineering, Inc. v. Spirit Const. Servs. Inc.*, 720 F. Supp. 2d 904 (S.D. Ohio 2010). "[A]n innocent misstatement, or a clerical error, in the affidavit and certificate of registration, unaccompanied by fraud . . . , does not invalidate the copyright, nor is it thereby rendered incapable of supporting an infringement action." *Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.3d 706, 708 (6th Cir. 1956). Although the defendants have

raised a plausible objection to the plaintiffs' registered copyrights, the defendants have not met

their burden to overcome the statutory presumption of validity, particularly where they have

failed to reference any authority for their position or to make fact-specific arguments by

reference to specific portions of the record. Furthermore, even assuming that the plaintiffs'

applications may have been defective in some (unspecified) way, the defendants have not met

their burden to show fraud on the Copyright Office (if that is indeed an affirmative defense the

defendants are pursuing).[17]

        b.      "Best Edition" Requirement

Second, the defendants argue that the plaintiffs' original copyright applications were of

questionable validity because the plaintiffs did not comply with the "best edition" copyright

deposit requirement, under which a copyright registrant is required to deposit with the Copyright

Office two complete copies of the best editions of a published work with a registration

application. 17 U.S.C. § 408(b); *see also St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*,

573 F.3d 1186 (11th Cir. 2009). The defendants argue that "the deposit images are very small

and seem unlikely to be the best editions." The defendants do not identify any particular image

that is "very small," nor do they cite to any caselaw support for their position. The plaintiffs

---

[17]The court's findings on this issue are based on the defendants' failure to overcome the presumption of validity. The court expresses no firm opinion concerning the propriety of the plaintiffs' copyright applications as a "single" or "group" registration under 37 C.F.R. § 202.3, nor has the court affirmatively ruled that those regulations necessarily apply. The parties' positions on these issues consist of a single paragraph in the defendants' Response and a single paragraph in the plaintiffs' Reply, neither of which reference any statute, regulation, or case citation. Furthermore, the plaintiffs, without citation to any authority, argue that the federal regulations for "visual arts" do not apply to "electronic works." In the court's initial examination of what it believes to be the relevant statutory and regulatory provisions, that distinction is not self-evident. At any rate, the merits of these arguments will be appropriate for the court to address at a later stage in these proceedings, based on a more developed record and focused briefing.

argue that they simply filed on the docket for this case the types of .pdf files required by this court's electronic filing system, which are not necessarily representative of the size of the deposit copies filed with the Copyright Office. The court credits the plaintiffs' explanation and finds that the defendants' factually and legally unsupported argument is insufficient to displace the presumption of validity.

c.      Authorship and Originality

Third, the defendants argue, without citation to legal authority, that the plaintiffs' works lack "minimal authorship," which the court construes as a challenge to the originality of the asserted copyrights. "[O]riginality requires independent creation plus a modicum of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 346 (1991). "[T]he originality requirement is not particularly stringent. A compiler may settle upon a selection or arrangement that others have used; novelty is not required. Originality requires only that the author make the selection or arrangement independently (*i.e.*, without copying that selection or arrangement from another work), and that it display some minimal level of creativity." *Id.* at 358. Here, the plaintiffs' works generally satisfy these limited requirements, which (to the extent the associated copyright was registered) are entitled to a statutory presumption of validity. The plaintiffs' selection of designs, the setting the plaintiffs chose for each product image, and/or their artistically creative electronic manipulation of otherwise publicly available images – whether a pink quatrefoil design, a weathered flag, a ladybug, "got blood" written in "bleeding" red letters, or a cover designed to look like "sizzling bacon," to name just a few – reflect the requisite minimal authorship and originality.[18] Again, the court finds the defendants' challenge

---

[18]With respect to the "weathered" flags, the plaintiffs have asserted that "Plaintiffs' flag designs achieve what Defendants call a 'weathered' appearance by means of an overlay

to the validity of the copyrights to be both legally and factually unsupported.

The defendants also argue that the "Peace, Love, Equality" and "Owl love you always" designs "are apparently the creation of others." In response, the plaintiffs admit that someone else created the "Peace, Love, Equality" design. However, the plaintiffs represent that the creator licensed the design to the plaintiffs, who pay royalties with respect to it. As to the second design, the defendants have introduced a third-party blog post containing images of the plaintiffs' "Owl love you forever" design. As the plaintiffs contend, in that blog post, the blogger does not purport to have created that design; instead, the blog post simply appears to consist of the blogger reposting images of designs that the blogger liked. In light of the plaintiffs' reasonable explanations, the court finds that the defendants' arguments with respect to these particular designs are without merit and, therefore, are insufficient to displace the statutory presumption of validity.

d.      Limitation on the Injunction

Finally, the defendants argue that, even with respect to the registered copyrights at issue, the court's injunction must be limited only to the 18 copyright collections for which the plaintiffs provided specific evidence of infringement, rather than the broader number of collections that the plaintiffs' verified Amended Complaint alleges were infringed. The court finds the defendants' argument to be without merit. The defendants have not rebutted the plaintiffs' sworn allegations that the defendants copied their works wholesale and sold counterfeit versions utilizing the plaintiffs' Graphic Designs and Product Images. Thus, although the court is precluded from preliminarily enjoining the infringement of unregistered copyrights and untimely

---

painstakingly designed independently by Bethany Primrose, not by means of any filter supplied by third party software." (Docket No. 52 at p. 4.)

registered copyrights, the court finds that the record sufficiently establishes that the plaintiffs are reasonably likely to have violated all or substantially all of the copyright collections that the plaintiffs allege were infringed. Whether the defendants happened not to have copied a particular collection will be an appropriate subject of discovery.

In sum, the court finds that the plaintiffs have demonstrated a reasonable likelihood of success on the merits of their copyright claims premised on timely registered copyrights, under both direct and indirect infringement theories.[19]

### 2. Remaining Rule 65 Factors

Because the court has found that the plaintiffs are reasonably likely to succeed on their claims of infringement with respect to the timely registered copyrights, the plaintiffs are entitled to a presumption of irreparable harm. *Forry*, 837 F.2d at 267. The defendants have not attempted to rebut that presumption, nor have they argued that the "harm to others" consideration has any bearing in this copyright infringement lawsuit. Finally, it is "axiomatic" that upholding copyright protections serves the public interest. *Tree Publ'g*, 785 F. Supp. at 1276-77 (citing *Apple Comp.*, 714 F. 2d at 1255). Therefore, the court finds that the plaintiffs have satisfied the Rule 65 factors and are entitled to an appropriate preliminary injunction.

## IV. **Nature of the Injunction**

The plaintiffs have asked the court to restrain the defendants from (1) causing Hostgator to replace the urls identified in the Takedown Notice and (2) more generally, from posting any infringing material online through any other ISP.

---

[19]But for the fact that the Copyright Office did not register the plaintiffs' remaining copyright collections by April 2, 2013, the court would also find that the plaintiffs have demonstrated a reasonable likelihood of success with respect to allegedly infringed collections registered after April 2, 2013.

The record does not appear to contain images of the squigglecase.com urls that the plaintiffs identified in their Takedown Notice to Hostgator. Nevertheless, the court has found that the plaintiffs are reasonably likely to show that the defendants violated the plaintiffs' timely registered copyrights by copying the plaintiffs' Graphic Designs and Product Images wholesale to run a competing business or businesses, and the plaintiffs have provided screencaps from both Amazon.com and squigglecase.com that demonstrate direct infringement. The plaintiffs have satisfied the court that both requested forms of injunctive relief are warranted to protect their copyright interests.

Although injunctive relief is warranted, the court's relief – at least as this stage – must be limited only to claims satisfying both of the following conditions: (1) the Copyright Office registered the underlying copyright collection on or before April 2, 2013, and (2) the Amended Complaint alleged that the defendants infringed that timely registered copyright. At least some of the claims at issue satisfy both criteria. (*See, e.g.*, Children's Collection 2010 (registered Nov. 28, 2011; identified in Ex. 3 to Am. Compl. as infringed; proof of infringement at Docket No. 33, Ex. 4, Part 3 [Attachment No. 50]).) However, it appears that the Copyright Office did not register one or more of the allegedly infringed copyright collections until after April 2, 2013 – notwithstanding an "effective" registration of April 2, 2013 or earlier. (*See, e.g.*, InsomniacArts website design.") Therefore, within a short time frame, the court will require the plaintiffs to file an affidavit containing (1) an itemized list of the applications actually registered by the Copyright Office on or before April 2, 2013,[20] and (2) representations, consistent with Exhibit 3

---

[20]Again, this list shall exclude any applications approved by the Copyright Office after that date, even if the *effective* date of that associated registration certificate is April 2, 2013 or earlier.

to the Amended Complaint, as to whether or not the plaintiffs claim infringement with respect to each of those timely registered copyrights.

Furthermore, concurrent with filing that affidavit, the court will require the plaintiffs to file a proposed injunction against the defendants for the court's consideration. Consistent with the findings set forth herein, the proposed injunction shall relate to the registrations issued as of April 2, 2013, and may include language seeking to (1) restrain the defendants from contacting Hostgator in an effort to replace any url that contains a Graphic Design or Product Image registered as of April 2, 2013, and (2) restrain the defendants from infringing those copyrights online through any other ISP.

The court will defer issuing a preliminary injunction until the plaintiffs provide these materials. In the interim, the court will temporarily restrain the defendants from contacting Hostgator in an effort to cause Hostagator to replace any of the links identified in the Takedown Notice.

## V.      Remaining Considerations

The court will dismiss without prejudice claims premised on asserted copyrights that were not registered on or before April 2, 2013. Given that most of those dismissed claims relate to copyrights that subsequently *were* registered after April 2, 2013, the court presumes that the plaintiffs will simply seek leave to amend the Amended Complaint to assert claims premised on those additional copyrights, and that the plaintiffs may seek further leave to amend once the Copyright Office passes on any remaining pending copyright applications.[21]

---

[21]As to the pending applications, the defendants are now well-aware of the plaintiffs' allegations of copyright infringement and the court's findings concerning the plaintiffs' likelihood of success on the merits as to the registered copyrights. Thus, even though the plaintiffs cannot bring claims on those unregistered copyrights until the Copyright Office passes

The court's findings would seem to incentivize the plaintiffs to seek leave to file a Second Amended Complaint in short order and, perhaps, to move to consolidate those (now-registered) copyrights as part of the forthcoming preliminary injunction. The plaintiffs have also requested a stay of proceedings until the Copyright Office passes on the remaining applications. For their part, the defendants argue that the plaintiffs' failure to record and file the url screencaps identified in the Takedown Notice makes it impossible to tell which urls correspond to particular copyrights.

In the interest of judicial economy and in an effort to spare the parties unnecessary time and expense, the court believes that the parties will be better served by addressing these issues through either (a) a joint stipulation and/or (b) a discussion with the court at the Initial Case Management Conference, which the court is scheduling by separate order concurrently herewith. Although the court's forthcoming preliminary injunction will necessarily be limited to a subset of the copyrights identified in the Amended Complaint, the defendants are on notice of the court's findings and the fact that the plaintiffs now hold presumptively valid copyrights for the vast majority of the allegedly infringed collections. Thus, even though some of those copyrights will (temporarily) not be part of this lawsuit or the forthcoming preliminary injunction, the defendants would, going forward, violate the plaintiffs' copyrights at their own peril.

## **CONCLUSION**

The court finds as follows:

- The defendants' Motion to Dismiss will be granted in part and denied in part. The plaintiffs' Motion for Registration will be denied in part on the merits and denied in part as moot. The plaintiffs' Motion for Preliminary

---

on the associated applications, the defendants presumably would be wary of resuming their offending practices with respect to those particular copyrights.

Injunction will be granted in part and denied in part.

- By November 18, 2013, the plaintiffs shall file (1) an affidavit consistent with the findings set forth herein, setting out (a) the copyrights that were registered as of April 2, 2013 and (b) which of those particular copyrights the plaintiffs alleged were infringed in their Amended Complaint, and (2) a proposed preliminary injunction for the court's consideration.

- Pending receipt of those materials, the court will (1) dismiss without prejudice claims premised on copyrights that were not registered when the Complaint was filed, and (2) issue a preliminary injunction related to the timely registered copyrights. The remaining copyright infringement claims premised on the timely registered copyrights will proceed.

- Pending the court's issuance of a preliminary injunction, the defendants will be temporarily restrained from contacting Hostgator in an effort to replace the links identified in the Takedown Notice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge