RUSSELL SCHENCK and BETHANY )
PRIMROSE d/b/a INSOMNIAC ARTS, )
            )
    **Plaintiffs,** )
            )    **Case No. 3:13-cv-00294**
**v.** )   **Judge Aleta A. Trauger**
            )   **Magistrate Judge Griffin**
CALE OROSZ and CASE DOODLE, LLC, )
            )
    **Defendants.** )

## MEMORANDUM

The plaintiffs have filed a Motion for Contempt for Violation of Preliminary Injunction Order (Docket No. 114), to which the defendants have filed a Response in opposition (Docket No. 127), and the plaintiffs have filed a Reply (Docket No. 132). The plaintiffs have also filed a Motion for Summary Judgment (Docket No. 116), to which the defendants have filed a Response in opposition (Docket No. 135), and the plaintiffs have filed a Reply (Docket No. 141). For the reasons stated herein, the Motion for Contempt will be denied, the Motion for Summary Judgment will be denied without prejudice, and the parties will be ordered to make supplemental submissions regarding the potential referral of certain questions to the Register of Copyrights.

## BACKGROUND

### I. Overview

Plaintiffs Bethany Primrose and her husband, Russell Schenck, do business as "Insomniac Arts" ("Insomniac") in Nashville, Tennessee. Primrose creates graphic designs ("Graphic Designs") that Insomniac prints onto goods such as mobile phone cases, tablet covers,

mugs, t-shirts, and other novelty items. Insomniac also creates images of the products with the designs superimposed upon them ("Product Designs"), which Insomniac uses to market and sell the items in online marketplaces, such as Amazon.com and through its own webpage. Both before and after the plaintiffs initiated this litigation, the plaintiffs filed copyright registrations relating to the Graphic Images and Product Designs. For the most part, the plaintiffs have essentially batch-registered "collections" of Product Images. Each collection contains variations on a central theme, such as designs stating "Peace, Love, and Equality" or "Breast Cancer Awareness."

Defendant Cale Orosz is a Nevada resident who operates defendant Case Doodle, LLC ("Case Doodle"). Orosz and Case Doodle operate under alternate business names, including the website "squigglecase.com" and "Ecello Electronics." Orosz and Case Doodle market and sell products in competition with the plaintiffs. The plaintiffs contend that the defendants copied and counterfeited Insomniac's copyrighted Graphic Designs and Product Images, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.* At least until a preliminary injunction issued in this case, the images on the defendants' goods were identical to the plaintiffs' Graphic Designs.

## II. Pre-Summary Judgment Proceedings

### A. The Plaintiffs' Complaints and the Court's Preliminary Injunction Orders

From the outset, this case has been litigated as a scattershot affair. The plaintiffs initially filed an unverified Complaint (Docket No. 1) that did not identify the specific copyrights at issue, was not accompanied by a preliminary injunction motion, and (apparently) was not properly served on the defendants. After the defendants moved to dismiss for improper service and failure to state a claim (Docket No. 15), the plaintiffs refiled an unverified Amended

Complaint (Docket No. 22). As best the court could tell, the Amended Complaint referenced approximately 61 copyright collections (only five of which had been registered before filing suit) and alleged infringement of only a subset of the copyrights.

After the defendants again moved to dismiss for failure to state a claim (Docket No. 28), the plaintiffs filed a retroactive "Verification" of their Amended Complaint (Docket No. 32) and a Rule 65 Motion for Preliminary Injunction (Docket No. 33), which the court granted in part and denied in part (*see* Docket Nos. 58 (Memorandum) and 59 (Order)). In its November 7, 2013 Memorandum concerning the Rule 65 motion (the "11/7/13 PI Memorandum"), the court observed that the defendants did not submit any sworn rebuttal to the plaintiffs' fundamental allegation: namely, that Orosz had wholesale plagiarized the plaintiffs' works and marketed them online for profit. Nevertheless, after parsing the record, the court was limited to enjoining the defendants only as to the five timely registered copyrights (*i.e.*, 5 of the 61 copyrights at issue). The court held that the plaintiffs would need to re-plead claims relative to the remaining unregistered or untimely registered copyrights. Also, because of ambiguities in the record and the plaintiffs' failure to file a proposed injunction order, the court ordered the plaintiffs to file a supplemental affidavit and a proposed injunction. The plaintiffs complied (Docket Nos. 60 and 61) and the court entered a Preliminary Injunction Order on November 18, 2013 (Docket No. 62).

On February 24, 2014, with leave of court, the plaintiffs filed a Second Amended Verified Complaint. (Docket No. 77) (the "SAVC"). The SAVC re-pleaded claims relative to additional copyrights, placing at issue a total of approximately 44 copyright registrations. Without consulting the defendants, the plaintiffs moved for an expansion of the Preliminary

Injunction to include these additional copyrights. (Docket No. 77.) After the defendants objected in part (Docket No. 79), the court ordered the parties to confer on agreed language for the expanded injunction (Docket No. 80). The parties complied (Docket No. 81), and the court entered an Expanded Preliminary Injunction Order on March 21, 2014 (Docket No. 82). In the meantime, the defendants responded to the SAVC by filing an Answer and Counterclaims, seeking a declaration of non-infringement (Count I), a declaration of invalidity based on fraud on the Copyright Office (Count II), and a declaration of invalidity based on lack of originality (Docket No. 78).

On March 31, 2014, again without consulting the defendants beforehand, the plaintiffs simultaneously filed a Motion to Strike certain of the defendants' affirmative defenses (Docket No. 84), a Motion to Dismiss the Counterclaims (Docket No. 86), and a Motion for Leave to File a Third Amended Verified Complaint (Docket No. 83). The defendants did not oppose the request for leave to amend, which the court granted on April 16, 2014 (Docket No. 91), thereby mooting the plaintiffs' Rule 12 motions. The court expressed some concern that the parties, particularly the plaintiffs, were not communicating before filing avoidable motions.

On July 7, 2014, the plaintiffs filed their Third Amended Verified Complaint (Docket No. 92) ("TAVC"), which remains the plaintiffs' operative complaint in this case. The parties appear to agree that the TAVC places at issue 43 different copyrighted collections. The defendants responded to the TAVC by filing an Answer and Counterclaims. (Docket No. 93.) The plaintiffs filed an Answer to the defendants' counterclaims. (Docket No. 94.)

### B. Discovery and Failed Attempts to Move Under Rule 56

Based on the record before the court, it appears that the discovery period was not well-utilized. As best the court can tell, neither party took any depositions or retained testifying experts, and there is no indication that the plaintiffs served written discovery.

The unevenness continued at the close of fact discovery. Without seeking the requisite leave of court (as required by ¶ 11 of the Case Management Order (the "CMO")), the plaintiffs filed a Motion for Partial Summary Judgment (Docket No. 95). Apparently realizing their mistake, the plaintiffs four days later retroactively requested leave to file a partial Rule 56 motion. (Docket No. 99). While the motion was necessary, it was not sufficient: because the plaintiffs failed to explain why a partial Rule 56 motion was justified – a requirement under CMO ¶ 11– the court denied the request for leave. (Docket No. 100.)

The plaintiffs filed a renewed Motion for Leave to File a Motion for Partial Summary Judgment (Docket No. 101), in which they contended that the court should rule in their favor relative to 28 of the 43 copyrights at issue in the TAVC. The defendants filed a Response in opposition (Docket No. 102), pointing out that (1) the plaintiffs' proposed motion and statement of facts inappropriately purported to treat the court's 11/7/13 PI Memorandum as preclusive findings of fact and law at the Rule 56 stage, and (2) the plaintiffs improperly relied on hearsay statements as to what the Copyright Office had allegedly told Primrose about her copyright registrations. The defendants threatened to move for sanctions under Rule 11, contending that they had informed the plaintiffs in an August 1, 2014 email about both of these deficiencies. On January 27, 2015, the court denied the plaintiff's request for leave to move for partial summary judgment. (Docket No. 103).

After failing to obtain leave to file a partial summary judgment motion, the plaintiffs moved to dismiss without prejudice 15 of their 43 registrations (*i.e.*, the ones on which they had not been seeking summary judgment) under Rule 41. (Docket No. 104.) In a Response in opposition to the plaintiff's Rule 41 motion, the defendants pointed out that the plaintiffs' motion raised more questions than answers, leaving open how dismissal would impact the defendants' counterclaims and whether the plaintiffs would seek to reassert the dismissed copyright claims. (Docket No. 105.) After a telephone conference with the court, the parties filed a Proposed Order of Dismissal (Docket No. 112), which the court entered on March 16, 2015 (Docket No. 113).[1]

Having narrowed the case to 28 copyrighted collections, the plaintiffs, on March 17, 2015, moved for "full" summary judgment (Docket No. 116) – a motion for which leave of court is not required – and for contempt (Docket No. 114).

### III. The Motion for Summary Judgment

The Motion for Summary Judgment attaches and relies upon copies of the copyright registrations for each collection, as well as screenshots reflecting purported infringement by the defendants on Amazon.com or squigglecase.com. (*See* Docket No. 116, Ex. 1, Parts 1-28).) At the time they were filed, the screenshots were not authenticated. The motion is also supported by the Declaration of Bethany Primrose (Docket No. 118), in which (1) Primrose describes how she creates the Graphic Designs and Product Images, and (2) Primrose avers that, after learning that the defendants were challenging the validity of her copyright registrations, she called the

---

[1] The Order indicates that the defendants did not waive any right to seek costs or attorney's fees as "prevailing parties" with respect to the dismissed registrations.

Copyright Office and received assurances from an unidentified person that the registrations did not need to be amended or otherwise corrected. The motion is also supported by a Statement of Facts (Docket No. 119), which largely recites the court's November 7, 2013 PI Memorandum as "facts", without referencing *evidence* in the record. Essentially, the Rule 56 motion contains the same procedural and evidentiary deficiencies that the defendants pointed out to the plaintiffs at least twice before, and on which the court had denied the plaintiffs' second request for leave to file a partial summary judgment motion.

The defendants have filed a Response in opposition (Docket No. 135), supported by a Memorandum of Law (Docket No. 138), the Declaration of Cale Orosz (Docket No. 137), the Declaration of Christopher McGeehan (Docket No. 139) (attaching evidentiary materials), and a Response to the plaintiffs' Statement of Facts (Docket No. 136). The plaintiffs have filed a Reply (Docket No. 141), which is supported by the Declaration of Bethany Primrose on Personal Knowledge (Docket No. 142) (averring that she personally took the screen captures reflecting infringement by the defendants), the Declaration of Anjlee Khurana in Support of Plaintiffs' Summary Judgment Reply (Docket No. 143) (averring that, on January 8, 2015, a named supervisory Copyright Office official assured Khurana that posting all of the images on a website was an appropriate unit of publication at the time the plaintiffs registered their copyright collections), the Declaration of Bethany Primrose on Creation of Product Images (Docket No. 144) (describing how she creates product images), and the Declaration of Bethany Primrose on

Approximate Date of Publication (Docket No. 145) (describing approximate date of publication of the iPod 5th Generation Product Photos Collection).[2]

## IV.  **The Motion for Contempt**

The plaintiffs' Motion for Contempt attaches a single screen capture of alleged infringement (Docket No. 114, Ex. 1) and is supported by the Declaration of Bethany Primrose (Docket No. 115).  In violation of Local Rule 7.01(a), the plaintiffs did not file an accompanying Memorandum of Law.  The defendants have filed a Response in opposition (Docket No. 127), supported by the Declaration of Cale Orosz (Docket No. 133) and the Declaration of Christopher McGeehan (Docket No. 129).  The plaintiffs have filed a Reply (Docket No. 132) supported by another Declaration of Bethany Primrose (Docket No. 132, Attach No. 1).  In this declaration, Primrose admits that she inadvertently averred in the SAVC and TAVC that she had created all of the Graphic Designs at issue.  Primrose now avers that her former college colleague, Alexandra Samantha Caldwell (formerly Jessica Brooke Caldwell), created a subset of designs and licensed them to Primrose, who thereafter incorporated the designs into the copyright collections and Insomniac's products.

## **MOTION FOR SUMMARY JUDGMENT**

The plaintiffs' Rule 56 motion and supporting materials are facially insufficient.

First, the plaintiffs purport to rely on the court's preliminary Rule 65 opinion as containing preclusive findings of fact and law, but the court's findings do not have that effect. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see also* Fed. R. Civ. P. 65(a)(2).  The

---

[2] It is not clear to the court why the plaintiffs did not consolidate the three additional Primrose Declarations into a single comprehensive declaration.

plaintiffs' Statement of Facts is premised largely on the court's earlier Rule 65 findings, *not the evidentiary record*, in violation of both Rule 56(c) and Local Rule 56.01. The motion will be denied on that basis.

Second, the plaintiffs also rely upon hearsay evidence, including Primrose's and Khurana's representations about what the Copyright Office told them. Because the plaintiffs are seeking to rely on those statements for the truth of the matters asserted – *i.e.*, that there is no invalidity problem inherent in the plaintiffs' copyrights – the evidence does not meet the Rule 56 standard as to that purpose. The plaintiffs also failed to authenticate the screenshots when they were filed. The court will deny the Rule 56 motion for these reasons as well.

Third, more generally, the plaintiffs seem to expect that the court will comb the record on its own (without the benefit of specific citations) to "connect the dots" among docket entries spanning approximately two years. That is not how the Rule 56 process works.

For all of these reasons, the Rule 56 motion will be denied.

## REFERRAL TO THE REGISTER OF COPYRIGHTS

### I. Invalidity Challenges and § 411(b)(2)

In response to the Rule 56 motion, the defendants have raised numerous objections to the validity of the plaintiffs' copyright registrations. The defendants claim that they "will refer" (presumably, they mean that they will ask *the court* to refer) questions to the Copyright Office under § 411(b)(2) concerning the validity of the plaintiffs' copyrights. Although the Rule 56 motion will be denied, a discussion of the defendants' arguments related to § 411(b)(2) is warranted because it will impact the next stage of this case.

### II. Preregistration, § 411(b)(2), and *Olem Shoe*

Under 18 U.S.C. § 411(a), a plaintiff may not maintain suit under the Copyright Act unless he or she has properly registered or preregistered a copyright in compliance with the Act. Under § 411(b)(1), a registration certificate satisfies the § 411(a) requirement, even if it contains inaccurate information, unless (a) the "inaccurate" information was "included" on the application for copyright registration with knowledge that it was inaccurate, and (b) the inaccuracy of the information, if known, would have caused the Register of Copyrights ("Register") to refuse registration. In other words, under § 411(b)(1), a plaintiff cannot maintain a copyright infringement action premised on a registered copyright if the plaintiff both (1) included inaccurate information on a registration application and (2) the Copyright Office would have refused to register the copyright had that inaccurate information not been included. Apparently in response to concerns that federal courts were misunderstanding and misapplying the Copyright Office's rules, Congress amended § 411 in 2008 to include § 411(b)(2), which requires referral of validity questions to the Register under certain circumstances. Specifically, "[i]n any case in which inaccurate information described under paragraph (1) [§ 411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* at § 441(b)(2) (current 2015).

It appears that only a handful of courts have addressed the implementation of § 411(b)(2). The parties here reference *Olem Shoe Corp. v. Washington Shoe Co.*, a Southern District of Florida case that involved extensive proceedings relating to § 411(b)(2)'s peculiar statutory mandate. *See, e.g.*, *Olem Shoe Corp. v. Washington Shoe Co.*, No. 09-23494-CIV, 2010 WL 3505100 (S.D. Fla. Sept. 3, 2010); *Olem Shoe Corp. v. Washington Shoe Co.*, No. 09-23494-

CIV, 2011 WL 6202282 (S.D. Fla. Dec. 1, 2011); *Olem Shoe Corp v. Washington Shoe Co.*, No.

09-23494-CIV, 2012 WL 28239 (S.D. Fla. Jan. 5, 2012); *see also Olem Shoe* Docket No. 168

(Request to the Register of Copyrights Pursuant to 17 U.S.C. § 441(b)(2)) (hereinafter, "*Olem*

*Shoe* Register's Response").  In most relevant part, the *Olem Shoe* court considered the

circumstances under which referral to the Register is warranted, worked with the parties to

narrow the questions to refer, referred several questions to the Register, received a detailed

response from the Register, and determined how to utilize the Register's response.  The court

finds those proceedings to be helpful and instructive here.

By its terms, § 411(b)(2) requires the court to seek an advisory opinion from the Register

in any case that "alleges" inaccurate information under § 411(b)(1) that, if known to the Register,

would have caused the Register to refuse registration.  This court shares the concern of the *Olem*

*Shoe* court that § 411(b)(2) creates a serious potential for abuse by introducing a mechanism by

which infringers can throw up roadblocks to merited infringement lawsuits, simply by "alleging"

technical violations of the underlying copyright registrations.  *See Olem Shoe*, 2010 WL

3505100, at *3 n.3.[3]  As the Register explained in its Response to the referral order in *Olem*

---

[3] As the *Olem Shoe* court explained:

> Although the Court is bound by 17 U.S.C. § 411(b)(2), the Court questions the
> practicality of the statute.  Under a plain reading of § 411(b)(2), the Court is
> required to seek the advice of the Register of Copyrights regardless of whether the
> party making the request has any factual basis for its allegations of inaccurate
> information.  Moreover, although the PRO IP Act and § 411(b)(2) appear to have
> been an attempt by Congress to strengthen copyrights and make enforcement
> easier, § 411(b)(2) gives a party accused of copyright infringement another
> weapon to delay the proceedings in district court, as Olem Shoe has done in this
> case.  Finally, the statute does not indicate whether the Court must accept the

*Shoe*, the Register takes a largely hands-off approach to copyright applications, rarely (if ever) conducting any independent investigation of the representations on the face of an application. (*See Olem Shoe* Register's Response at pp. 4-5.)  Therefore, the copyright application itself becomes a trap for the unwary, because the Copyright Office will not catch any latent and inadvertent mistakes in the application (the wrong date of publication, the failure to disclose a pre-existing work, etc.), which will then complicate efforts to enforce the registered copyright later, provided that an infringer invokes § 411(b)(2).

To add to this court's concern, federal courts are not even bound by the Register's advice, although the Register believes that "it would be appropriate for the court to give deference to the Register's response in such matters, since the Register is in the best position to state what the Register would or would not do under the stated circumstances."  (*Olem Shoe* Register's Response at p. 12.)  Furthermore, under the Sixth Circuit standard – articulated decades before § 411(b)(2) was enacted – an innocent misstatement or clerical error in the application and certificates of registration, if unaccompanied by fraud, does not invalidate the copyright or render the certificate of registration incapable of supporting an infringement action.  *Advisers, Inc. v. Wiesen-Hart-, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956).  Thus, § 411(b)(2) could be construed as requiring referral to the Register of questions that, ultimately, will not matter unless

---

advisory opinion of the Register of Copyrights.  Ordinarily a district court is not necessarily bound by the Copyright Office's refusal to register a copyright.  *See* 17  U.S.C. § 411(a) [parenthetical omitted].  Thus, it seems questionable that a district court is to be bound by the Register of Copyrights' opinion under § 411(b)(2).

*Olem Shoe*, 2010 WL 3505100, at *3 n.3.

the court also finds fraud.  The parties have not cited, nor has the court located, any Sixth Circuit opinion addressing how the statutory of presumption of validity and the *Advisers* standard intersect with § 411(b)(2)'s referral requirement.

This case may be indicative of the problems that § 411(b)(2) creates.  The plaintiffs did not register many of their copyrights until after initiating litigation, and, perhaps acting in haste, some of their applications may have contained inaccuracies or omissions (perhaps inadvertent ones).  The defendants in this litigation have pounced, asserting numerous potential defects in the plaintiffs' copyright applications, which they contend require the court to seek an advisory opinion from the Register under § 411(b)(2).

## III.  <u>Threshold Inquiry Before Making a § 411(b)(2) Referral</u>

In *Olem Shoe*, the Register herself requested that district courts not refer questions to the Register based on allegations that are "unsupported by any facts" in the record.  (*Olem Shoe* Register's Response at p. 11.)  Nevertheless, the Register suggested that, "if the issue depends *even in part on interpretation or understanding of the Copyright Office's registration practices*, the more prudent practice – and the practice anticipated in § 411(b) – would be to refer the question to the Register."  (*Id.* at p. 12 n.5) (emphasis added).  The Register's suggested approach seems to comport with the statute, which seeks to eliminate guesswork by federal courts as to what the Register "would have done" under a different set of circumstances.  Thus, assuming that the Register's suggestions are appropriate, that approach begs two questions here: (1) have the defendants adequately "alleged" a violation of § 411(b)(1); and (2) do those allegations have factual support?

## IV.  <u>Application of § 411(b)(2)</u>

Although the defendants have criticized the plaintiffs' Rule 56 submissions for containing inadequate proof and for failing to include appropriate record citations, this is the pot calling the kettle black. In a nine-page section of their brief concerning the § 411(b)(2) issue, the defendants cite to the record only a handful of times, including a citation to a non-existent paragraph of the McGeehan Declaration. Be that as it may, from the outset of this litigation, the defendants have consistently raised potential concerns with the plaintiffs' copyright applications and registrations, at least some of which raise questions that appear to merit referral to the Copyright Office for an advisory opinion. In the interest of providing guidance to the parties, the court will address the § 411(b)(2) issue as best it can at this stage.

**A. Unit of Publication Rule**

When the Copyright Office approved the 28 copyright registration applications at issue in this case, it operated under a Second Compendium of U.S. Copyright Office Practices (the "Second Compendium"). Effective December 22, 2014, the Copyright Office issued a superseding "Third Compendium of U.S. Copyright Office Practices" (the "Third Compendium"). The Third Compendium contains a "unit of publication" rule that the plaintiffs' earlier copyright registrations may not have met.

The defendants argue that the plaintiffs' copyright registrations are invalid under the "unit of publication" rule set forth in the Third Compendium. The plaintiffs argue that, at the time they submitted the copyright registration applications, the applications were sufficient under the Second Compendium. Both Primrose and her counsel, Ms. Khurana, aver that they spoke with someone at the Copyright Office about this issue and that, in each instance, an unidentified person at the office told them that the registrations did not require any amendment.

Unfortunately, the plaintiffs have not provided a copy of (or referenced) the Second Compendium rules on which they rely.

The court is skeptical that the plaintiffs' copyright applications could be retroactively invalidated by the Third Compendium. Presumably, the defendants are contending that the applications were "inaccurate" because the plaintiffs misrepresented the "date of publication" of the collection in each application. But that information can only be "inaccurate" if it violated the Copyright Office's prevailing standards at the time the Register approved the application. Unless the defendants can make a good faith fact-based contention that the plaintiffs violated the unit of publication rule in effect at the time (*i.e.*, under the Second Compendium), it is difficult to see how the defendants could prevail on this argument. Nevertheless, because the issue seems to implicate interpretation or understanding of the Copyright Office's registration practices, the court could refer this issue to the Register. If the representations that the Copyright Office made to the plaintiffs and their counsel were correct, then the Register will likely confirm the plaintiffs' position in any case.

### B. Non-Disclosure of Pre-Existing Works

With respect to 11 collections, the defendants contend that the plaintiff did not disclose to the Register that those collections included preexisting works.[4] The defendants' primary

---

[4] The defendants cite eleven collections as a whole. They seem to be referencing only collections containing one or more designs created by Caldwell (not Primrose) and licensed to the plaintiffs. These include at least some images within the following collections: GLBT Pride, Peace and Love, the North American Flag Grunge Design and Product Shots, Ice Hockey, Faith and Religion, Halloween, Breast Cancer Awareness, Sports and Recreation, Book Lovers, Food and Drink, and iPod 5th Generation Photos.

argument is that, "[s]ince the product images' appearance are dictated [sic] by the nature of the useful article on which the graphic design is to be applied, there is insufficient original material that is severable from the original graphic design." Aside from the court's puzzlement as to what this means, the defendants do not cite to the record or to the Second Compendium. In fact, under Second Compendium § 626.01(a), a statement of a pre-existing material for a derivative work was *not* required "unless a substantial amount of the material incorporated in the derivative work is in the public domain or has been registered or published previously." (Second Compendium § 626.01(a) (emphasis added)).

Here, the plaintiffs admit that some of their designs are based on a license to unregistered and published works created (and licensed to Primrose) by one of Primrose's friends. That admission would seem to exempt those designs from the pre-existing material disclosure requirement under § 626.01(a). Nevertheless, it is difficult to tell from the record which collections contain public domain material, material included in preexisting works, or neither type of material. The court cannot evaluate this challenge without more information.

The plaintiffs also make a valid point that it is absurd to claim that they needed to disclose certain widely disseminated public domain materials to the Copyright Office. For example, are the defendants actually claiming that the plaintiffs committed fraud on the Copyright Office by failing to disclose that someone other than the plaintiffs created the Canadian national flag? The defendants need to be more specific about which Graphic Images or Product Designs they are challenging and which they are not.

### C.  Incorporation of Previous Publication Dates

The defendants claim that three collections (the GLBT Collection, the Peace and Love Collection, and the Sports Collection) "contain works incorporating graphic designs registered by Primrose in different collections include [sic] with earlier publication dates." The defendants cite to ¶¶ 4-7 of the McGeehan Declaration in support of this contention, but the references make little sense without further explanation. The defendants have not shown what designs had already been registered in previous collections. Furthermore, the defendants have not shown what is allegedly "inaccurate" about the applications related to those collections or, even if the information were inaccurate, why it would have caused the Copyright Office to refuse to register those collections.

### D. iPod 5th Generation Photos

The defendants claim that one collection, the iPod Fifth Generation Photos registration, contains an inaccurate publication date of March 29, 2013, which is impossible because it post-dates the alleged date of infringement. In a Supplemental Affidavit, Primrose admits the mistake and states that, based on her own contemporaneous notes, she likely published the collection on February 4, 2013 or soon thereafter. In light of this affidavit, it is unclear whether the defendants continue to allege fraud on the Copyright Office with respect to this collection.

### E. Originality

The defendants also claim that the Pattern Collection and the Proud Air Force Collection are insufficiently original, but the defendants do not identify any "inaccurate" information contained in the applications related to those collections. The court sees no basis to consult with

the Register, absent an indication of *inaccurate information* on the copyright application itself, which is a predicate requirement under § 411(b)(1) for referral under § 411(b)(2).[5]

In sum, the court perceives some issues that *could* merit referral to the Register based on appropriate showing. However, these issues require renewed consideration by the defendants in light of the guidance set forth herein.

## V. The Orosz Affidavit Concerning Copying

Based on an affidavit from Cale Orosz, the defendants claim that there is a genuine dispute of fact as to whether the defendants copied any of the plaintiffs' materials.

Orosz avers that he creates some designs and copies others. With respect to designs that he copies, he avers that he obtains raw images from "stock image sites" such as deviantart.com, free-extras.com, gettyimages.com, freepik.com, stockfresh.com, colourbox.com, and shutterstock.com. He claims that he takes these designs and creates his own product images by running a computer script that crops the images, places them on a product (like a cell phone case), and adds features such as a hand holding the product bearing that image. He avers that "all images on the Defendants' Amazon and Squiggle Case websites were created using these scripts" and that the defendants "never copied product images from any other website." He also avers that the defendants "did not copy *any graphic designs, product images, or text* from the

---

[5] The defendants also seem to raise other over-arching arguments concerning the validity of the copyrights, although these arguments are not easy to follow and are not supported by appropriate record citations. The court will not delve any further at this stage, other than to reiterate that it will likely apply the same standards as the *Olem Shoe* court before referring any questions to the Register.

Insomniac Arts website, Plaintiffs' Amazon or eBay pages, or any other site where Defendants sell their products." (*Id.*) (emphasis added).

In the court's mind, Orosz's affidavit raises more questions than answers. Where does he claim to have obtained each allegedly infringing image at issue in *this case*? Aside from his self-serving statement, does he have any proof demonstrating the origin of the images? Are his product images at all different from the Product Images utilized by the plaintiffs? Does Orosz assume that these stock image sites contain only non-copyrighted (non-copyrightable) images? Does he check to identify the origins of the images? Was he aware of Insomniac Arts (the company or the website) before the allegedly infringing activity occurred? Because the Rule 56 motion will be denied, the court need not determine whether these generalized averments are sufficient to create a genuine dispute of fact concerning copying.[6]

## MOTION FOR CONTEMPT

The Motion for Contempt merits only brief treatment. The plaintiffs assert that the defendants are in contempt of the Expanded Preliminary Injunction Order because the plaintiffs identified a single unauthorized copy on squigglecase.com of a single Product Image from the Sport and Recreation Collection 2011 on March 16, 2015 (the day before they filed the instant Rule 56 motion).[7] A bit of context demonstrates why a finding of contempt is not warranted.

---

[6] It is surprising that the plaintiffs did not take the deposition of Orosz or of Case Doodle to explore these issues before moving for summary judgment.

[7] As mentioned herein, the plaintiffs did not file a Memorandum of Law in support of their Motion for Contempt, in violation of Local Rule 7.01. The motion is subject to dismissal on that basis alone.

In March 2013, before filing this lawsuit, the plaintiffs filed a takedown demand on Hostgator.com, the service provider that hosted Case Doodle's squigglecase.com website.  At Orosz's request, Hostgator provided Orosz over 20 pages of "url" links that the plaintiffs had identified to Hostgator.  Orosz set about removing all of these listings using a computer script. On November 18, 2013, the court entered an injunction (using the plaintiffs' proposed language) that restrained the defendants from contacting Hostgator to reactivate the disabled links or to infringe the copyrights through any other internet service provider.  Based on this language, the parties appeared to assume that all links had already been disabled.  The court later issued an expanded injunction to the same effect.

Apparently one product image slipped through the cracks: Orosz's initial script did not disable one url containing the "Give Blood Play Rugby" design.  Orosz avers that he was unaware of this oversight and that he did not collect any revenue from that link.  The plaintiffs did not bring this matter to the defendants' attention until 5 p.m. on March 17, 2015 (two years after the initial takedown demand), when they filed the instant Motion for Contempt.  Defense counsel forwarded the materials to Orosz at 7:30 p.m. that night, and Orosz disabled the link 30 minutes later.

The defendants do not appear to dispute that leaving up the link constituted potentially infringing activity and that they are now likely precluded from asserting a defense under 17 U.S.C. § 412.  However, they contend, among other things, that (1) the validity of this Product Image is in question because it is one of the "derivative" works premised on an "already published graphic design created by Alexandra Caldwell," and (2) the defendants should not be held in contempt for a minor, inadvertent mistake that they immediately corrected.  The first

point is a frivolous argument: the defendants cannot violate an injunction based on their unilateral position concerning its continuing merits.  The second point is a better one.  The violation of the injunction was an outlier and an oversight, which the defendants immediately corrected upon being made aware of the issue.  Had the plaintiffs brought this issue to the defendants' attention before filing the motion, the court has no reason to doubt that the error would have been corrected immediately.  Of course, it is not the plaintiffs' obligation to police the defendants' compliance with the injunction, but this appears to be in isolated, inadvertent issue that could have been discovered years ago.  The court will therefore deny the Motion for Contempt.

## VI.  <u>Next Steps</u>

The court is left with quite a mess on its hands.

As a general matter, the court is not enamored of the defendants' approach, which appears to be an effort to "throw mud against the wall and see what sticks."  Nevertheless, the court has a statutory obligation to refer legitimate questions of validity to the Register, provided that (1) they relate to "inaccurate" information "included" on a copyright application, (2) if the correct information were known, the Register might have refused to register the copyright, and (3) there is an evidentiary basis for each proposed question.

As with the district court in *Olem*, this court is concerned that the statutory mandate set forth in § 411(b)(2) can be abused and may, as here, lead to side disputes about technical defects in registration applications that are largely divorced from the underlying infringement claims.  The defendants are advised to make a serious evaluation of the invalidity defenses they are claiming, including whether there is a good faith basis in fact and law for each challenge.

Ultimately, the plaintiffs' claims will be resolved on the merits; if that requires the court to obtain input from the Register and to permit to the plaintiffs time to rectify any deficiencies in their copyright registrations, the court will be prepared to adjust the case schedule accordingly.

Under the circumstances, the court will deny the plaintiffs' Rule 56 motion without prejudice and set new deadlines. Since the parties have demonstrated little ability to work cooperatively without court intervention, the court will impose interim requirements. By June 12, 2015, the defendants shall serve on the plaintiffs a statement of their validity objections to the plaintiffs' copyright registrations. The statement shall identify the specific collections subject to each challenge, the allegedly "inaccurate" information "included" in each registration application, the legal basis for the challenge, and the record evidence supporting that challenge. The plaintiffs shall serve a response by June 29, 2015. By July 13, 2015, the parties shall confer about whether, in light of each other's positions, they can agree on questions that should be posed to the Register under § 411(b)(2). If the parties cannot agree (or can agree only in part), the defendants have the court's leave to file a Motion to Refer Under § 411(b)(2) by July 27, 2015, to which the plaintiffs may file a Response by August 10, 2015. The defendants' motion shall include the specific questions that the defendants ask the court to pose to the Register. The plaintiffs' response may include proposed alternative questions to pose to the Register.[8]

---

[8] The court understands that the plaintiffs may object to posing certain questions to the Register in the first place. Nevertheless, should the court choose to pose a question over their objection, it would behoove the plaintiffs to address the propriety of the language proposed by the defendants. Of course, to the extent the parties can agree on the proposed wording of questions to the Register, they are encouraged to do so.

The parties should assume that the court will apply the same degree of scrutiny and the same standards as the district court in *Olem Shoe*. The defendants are strongly advised to reevaluate their positions in light of the Second Compendium, which governed the Register's decisions during the relevant time frame. The defendants should also consider (1) whether they possess any evidence that the plaintiffs intended to defraud the Register, as the Sixth Circuit standard requires, and (2) whether the affidavits filed by the plaintiffs obviate the need to seek an advisory opinion from the Register.[9] In general, the parties are strongly encouraged to reach agreement on questions to pose to the Register, which may serve to resolve (one way or the other) many of the challenges the defendants have raised thus far.

The court will suspend the current trial date and will suspend the current case management deadlines. If the court decides that posing questions to the Register is warranted, the parties should assume that (1) the court will suspend proceedings until it receives a response from the Register; (2) if the Register indicates that there were any inaccuracies in the plaintiffs' copyright applications and registrations, the court will further suspend proceedings to permit the plaintiffs to cure those deficiencies; and (3) the court will consider whether to afford the plaintiffs another opportunity to file a properly supported Rule 56 motion. Once the § 411(b)(2) issues are sorted out, the court will consider what next steps are necessary, including resetting the Rule 56 deadline and the trial date.

---

[9] For example, Primrose avers that she has a license to utilize Caldwell's previously unregistered designs. Do the defendants have any evidence to rebut this testimony? If not, why should the court conclude that the plaintiffs were nevertheless required to disclose information about Caldwell under the then-prevailing Second Compendium standard?

## **CONCLUSION**

For the reasons set forth herein, the Rule 56 motion and the Motion for Contempt will be denied, the remaining case management deadlines will be reset, and the trial date will be continued pending further proceedings.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge